IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 19-cv-02801-PAB-KMT

ALEX HAIRSTON,

      Plaintiff,

v.

COSTCO WHOLESALE CORPORATION,

      Defendant.

---

## ORDER

---

This matter is before the Court on the Motion for Summary Judgment by Defendant Costco Wholesale Corporation [Docket No. 48]. Plaintiff responded, Docket No. 65, and defendant replied. Docket No. 68. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

Plaintiff worked for defendant from July 10, 1999 through August 2, 2018. Docket No. 48 at 1, ¶ 1. In 2008, defendant promoted plaintiff to Manager of the Optical Department at defendant's West Colorado Springs, Colorado location ("the "Warehouse"), where plaintiff remained until his employment ended. *Id.* at 1–2, ¶ 2.[2] In

---

[1] The following facts are undisputed unless otherwise noted.

[2] Plaintiff purports to deny this fact but does not support his denial with a specific reference to the record. *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.b.iv ("Any denial shall be accompanied by a **brief** factual explanation of the reason(s) for the denial and a **specific reference** to material in the record supporting the denial."); Fed. R. Civ. P. 56(c)(1)(A). The Court therefore deems this fact admitted.

several of plaintiff's performance reviews, plaintiff's managers noted his "lack of tolerance" for others and his "reluctance to adjust" or "accept[] criticism [without being] defensive." *Id.* at 2, ¶ 3.  His managers encouraged him to "work on building his relationships with those above him," to work on his "interpersonal skills," and to "maintain[] a positive attitude." *Id.*  Plaintiff, however, refused to take training classes, and, three months before his termination, he had failed to timely complete more than ten required classes. *Id.*, ¶ 4.  Assistant General Manager ("AGM") Chris Dages noted that plaintiff appeared to take "pride in the fact that he is avoiding completing [his] training," and plaintiff wrote, "I will not give in" on a reminder notice to take the "Standard of Ethics for Managers" training. *Id.*, ¶¶ 5–6.  Plaintiff explained at his deposition that he refused to take the Standard of Ethics training because he disagreed with management's decision to demote rather than terminate a former general manager ("GM") for "fraternizing and showing favoritism," which plaintiff believed meant that defendant was not following the very standards plaintiff was to be trained on. *Id.* at 2–3, ¶¶ 7–8.  Before Brandon Ruiz took over as GM of the Warehouse, there was no reference in plaintiff's personnel file of a failure to complete training, and employees are permitted to allow training requirements to go unfilled.  Docket No. 65 at 6, ¶¶ 2–3.[3]

In February 2017, a customer in Georgia called the Warehouse to order contact lenses for her son, an Air Force Academy student, who needed the lenses quickly.

---

[3] Defendant denies this fact, but does not support its denial with a citation to the record.  Docket No. 68 at 9, ¶ 3.  The Court therefore deems this fact admitted.

Docket No. 48 at 3, ¶ 9.[4]  Plaintiff refused to take the customer's order even after the customer spoke with AGM Hylise Dickey, who instructed plaintiff to fill the order.  *Id.*, ¶ 10.  Plaintiff acknowledged that defendant's policies allowed him to accept credit card payment over the phone under these circumstances.  *Id.*[5]  Plaintiff maintains that he consistently had refused to accept credit card payment, that he would not change his practice even if instructed by his AGM over the phone, and that he "wasn't going to change the way [he] did things over in optical."  *Id.*, ¶ 11.  There is no record in plaintiff's personnel file regarding this issue.  Docket No. 65 at 6, ¶ 5.

In June 2017, Kelsey Thornton, who worked in the Optical Department under plaintiff, was selected for a position in the Hearing Aid Department.  Docket No. 48 at 10, ¶ 32.  Dages, who selected Thornton, notified plaintiff of his choice, but asked plaintiff to keep the decision confidential until Dages could notify the other applicants.  *Id.*  Despite this instruction, plaintiff told another applicant, Charlie Stanisz, that Stanisz

---

[4] Plaintiff disputes this fact by arguing that he "was being asked to violate Costco policy that all credit card payments be accompanied by personal identification."  Docket No. 65 at 4, ¶ 9.  This fact, however, does not mention any of defendant's policies, and plaintiff does not deny that a customer from Georgia called to get contacts for her son in Colorado.  The Court therefore deems this fact admitted.

[5] Plaintiff purports to deny this fact by arguing that he had never "taken credit cards without personal identification" and that "management was okay with it."  Docket No. 65 at 4, ¶ 10.  Plaintiff, therefore, appears to admit that he refused to fill this customer's order even after Dickey instructed him to do so.  Plaintiff also does not dispute his testimony that he was permitted to accept credit card payment by phone under these circumstances.  *Id.*  Instead, plaintiff cites to the "Front End Manual."  *Id.* (citing Docket No. 65-3).  That document indicates that photo verification is required if the customer's membership card does not have a photo and the customer is using an American Express or Costco credit card.  *See* Docket No. 65-3 at 2.  The document does not require photo verification for phone orders or indicate that an AGM cannot instruct a manager to fill an order.  *See id.*  Because plaintiff's denial is unsupported, the Court deems this fact admitted.

was not selected because Thornton had more seniority.  *Id.*, ¶ 33.  Plaintiff claims he just repeated what Dages told him, but Stanisz had more seniority, and, when Stanisz said he would "go to corporate to complain," plaintiff encouraged him.  *Id.*

When Dages learned that plaintiff had told Stanisz that Stanisz had not been selected, Dages called plaintiff to confront him about sharing confidential information that he had been told not to share.  *Id.* at 11, ¶ 34.  Plaintiff called Alison Swennumson from human resources to ask her who informed Dages that plaintiff told Stanisz about not being selected.  *Id.*

In February 2018, Brandon Ruiz became GM of the Warehouse.  *Id.* at 3–4, ¶ 12.  On June 26, 2018, Ruiz emailed plaintiff about setting up a "sunglasses roadshow," which is a promotional display of merchandise.  *Id.* at 4, ¶ 13.  Ruiz sent another email to plaintiff on July 2, asking plaintiff to "see me so we can discuss doing this show properly."  *Id.*, ¶ 14.  On July 9, Ruiz called plaintiff and asked him to come to Ruiz's office to speak with him.  *Id.*, ¶ 15.  Plaintiff refused because he "didn't trust" Ruiz and "wouldn't talk to him."  *Id.*  Ruiz then went to the Optical Department to speak to plaintiff in person, but plaintiff again refused to speak with Ruiz.  *Id.*  Plaintiff acknowledged at his deposition that he was required to talk to Ruiz about Warehouse matters because "it's [Ruiz's] warehouse," yet plaintiff refused to speak with Ruiz despite not knowing what Ruiz wanted to discuss.  *Id.* at 4–5, ¶ 16.  Ruiz suspended plaintiff the next day for insubordination.  *Id.*[6]  Plaintiff testified that he was

---

[6] Plaintiff contends that Ruiz justified the suspension, and subsequent termination, with incidents of which Ruiz had no personal knowledge and for which plaintiff was not "written up" for, as required by defendant's policies.  Docket No. 65 at 6, ¶ 6.  Plaintiff supports this contention with a document titled Costco Employee

uncomfortable doing roadshows because, the last time that he had done a roadshow, he ended up with merchandise that he could not sell.  Docket No. 65 at 6, ¶ 7.[7]

During the time plaintiff was suspended, plaintiff's subordinates in the Optical Department complained about him to Ruiz, who reported these complaints to human resources, which then initiated an investigation led by Swennumson.  Docket No. 65 at 5, ¶¶ 17–18.[8]  The Optical Department had six employees, two male employees, Alex Gordon and Richard Perez, and four female employees, Thornton, Kayce Wells, Megan Hartman, and Desirá Varos.  *Id.*, ¶ 19.  Swennumson interviewed five of the six employees in the department.  *Id.*  All six employees in the Optical Department gave similar descriptions of plaintiff's treatment of women.  *Id.* at 5–6, ¶ 20.  For instance, Alex Gordon stated, "[h]e makes [females] do things differently than what we [males] have to do"; "I have seen him push [two female employees] out of the department"; "he basically gives them the cold shoulder.  It's like a long drawn out process of revenge.  He won't answer their questions or respond.  Then he will micromanage them to death."

---

Agreement, which provides timelines for "Counseling Notices."  Docket No. 65-9.  This document does not relate to the issue of Ruiz's personal knowledge and whether Ruiz or Costco needed personal knowledge to suspend or terminate plaintiff.  Plaintiff's statement regarding Ruiz's basis for plaintiff's suspension is unsupported.

[7] Defendant admits plaintiff's testimony, but denies that the testimony is truthful.  Docket No. 68 at 9, ¶ 7.  Defendant does not support its denial with any citation to the record.  The Court therefore deems this fact admitted.  Plaintiff claims that he refused to meet with Ruiz without a witness present, consistent with defendant's open-door policy.  Docket No. 65 at 7, ¶ 8.  However, the policy that plaintiff attaches does not indicate that an employee can refuse to meet with a supervisor.  Docket No. 65-17 at 3.  Rather, it states that an employee "ha[s] the option of contacting any Supervisor or Manager to help [the employee] resolve problems."  *Id.*

[8] Plaintiff purports to deny these facts but does not support his denials with any citation to the record.  The Court therefore deems the facts admitted.

*Id.*  Kayce Wells stated that plaintiff refused to speak with Thornton or Hartman for six months after a transaction with plaintiff's parents: "It was very, very uncomfortable.  He would talk about them behind their backs pretty poorly.  He would not respond to them whatsoever unless it was a work related question. . . .  It was like cold shoulder punishment."  *Id.*  Varos stated, "[o]ne time [Hartman] cleaned the counter.  He called her over and in front of us and in front of the members and he says, you missed a spot.  She looks at it and there's nothing there.  He makes her clean it again."  *Id.*

Plaintiff also intimidated his employees, which kept them from reporting his behavior earlier.  *Id.* at 6–7, ¶ 21.  Varos said, "[h]e instills so much fear in you" and that plaintiff would ask her if she was a "snitch" when he saw her speaking with Dages.  *Id.*  Thornton complained to Ruiz that she "was afraid of retaliation in all aspects" and that she "walks on egg shells all day."  *Id.*  Wells did not report plaintiff's behavior because she "was fearful of being on [plaintiff's] bad side," as plaintiff "picks on certain people," particularly female employees "Megan, Kelsey, and Desirá," and Wells "did not want to be involved or stir the pot."  *Id.*

A number of Optical Department employees reported that plaintiff referred to two Middle Eastern employees as "dirka-dirkas."  *Id.* at 7, ¶ 22.  Erfan Mirhossaini wanted to transfer to the Optical Department; however, when he asked plaintiff if he would be allowed to train there, four employees and Mirhossaini reported that plaintiff responded, "we don't train dirka-dirkas here."  *Id.*  Perez described Mirhossaini "pretty shocked" at what he heard, and Perez reported that plaintiff also said, "[y]ou're not gonna work in this department."  *Id.*  Plaintiff admitted at his deposition that he made these comments,

but claimed that he was joking.  *Id.*  In another instance, when plaintiff learned that Mesfin Yimer would become the new Regional Optical Manager, plaintiff said that he would not let Yimer "tell him what to do because he was a dirka dirka."  *Id.* at 8, ¶ 23. Several employees also reported that plaintiff spread rumors that female employees were promoted because they were sleeping with managers.  *Id.*, ¶ 25.[9]  Plaintiff contends that all of these statements are false, yet testified that he had "no explanation" for why his employees would make false statements about him, and he acknowledged that defendant and Swennumson would have no way of knowing that the statements were false.  *Id.*, ¶ 26.  Plaintiff believes that these employees' statements are undercut by text messages that he has exchanged with them.  Docket No. 65 at 7, ¶ 9.[10]

Defendant's employee agreement lists several policy violations that can result in termination, including (1) harassment, discrimination, and retaliation; (2) malicious gossip or inappropriate, derogatory, and discriminatory comments; (3) serious misconduct; (4) insubordination; and (5) violation of the Manager's Standard of Ethics. Docket No. 48 at 8–9, ¶ 27.  Defendant's Manager's Standard of Ethics states, in part,

---

[9] Plaintiff denies this fact; however, he states only that he was not the source of this information.  Docket No. 65 at 5, ¶ 25.  Plaintiff cites his deposition testimony, where he claims that he did not make a particular comment but admits to having said it "wouldn't surprise [him]" about a female employee being seen with Ruiz.  Docket No. 65-5 at 2–3, 66:14–67:17.  Plaintiff, however, does not deny that he spread rumors about female employees.  The Court therefore deems this fact admitted.

[10] Defendant disputes this statement and directs the Court to a section of its reply brief.  *See* Docket No. 68 at 9, ¶ 9.  Defendant's denial is not supported by a citation to the record, however, and the Court will not consider the legal argument that defendant attempts to incorporate in its denial.  Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3.b.vii ("**[l]egal** argument is not permitted here and should be reserved for separate portions of the briefs").  The Court therefore deems this fact admitted.

that managers must "treat employees . . . with respect and dignity" and "strive to keep the workplace free of any form of harassment, discrimination, or retaliation." *Id.* at 9, ¶ 28. After Swennumson's investigation, defendant terminated plaintiff for violating these five policies. *Id.* at 8–9, ¶ 27.[11] Senior Regional Vice President Richard Wilcox and Regional Vice President Jill Whitaker made the decision to terminate plaintiff, and Whitaker reviewed the proposed termination with Executive Vice President of the Southern Division Russ Miller, who approved the termination. *Id.*, ¶ 29.[12]

Plaintiff claims that, "for years," he raised complaints about diversity to defendant's human resources department, yet he did not participate in any diversity initiatives or offer any specific recommendations to improve diversity. *Id.*, ¶ 30. Swennumson did not investigate plaintiff's diversity complaints. Docket No. 65 at 7–8,

---

[11] Plaintiff claims that most of his "violative conduct" occurred before Ruiz arrived at the Warehouse and that he was "never written up for same." Docket No. 65 at 5, ¶ 27. Plaintiff, however, does not dispute that he was terminated based on the results of Swennumson's July 2018 investigation. *Id.* Plaintiff also claims that Ruiz "commenced the creation of a 'paper trail' by [a] fictitious April 5, 2018 Counseling Notice," which "formed the basis of an outright prevarication to the EEOC." *Id.* The Court does not consider this statement. First, it is a legal argument that is not permitted in the fact section. Second, plaintiff's only support for this portion of his denial is an "Employee Counseling Notice" regarding absenteeism, *see* Docket No. 65-24, which does not contradict that he was terminated for violating defendant's policies.

[12] Plaintiff purports to deny this fact, but does not support his denial with any citation to the record. The Court therefore deems this fact admitted. The parties agree that defendant's policies require a Senior Vice President or someone more senior to review the termination of any employee who has worked for defendant for more than five years. Docket No. 65 at 7, ¶ 13. Plaintiff claims that defendant did not follow its termination policy because the termination notice "was not signed by a Costco Executive." *Id.* The policy requiring a Senior Vice President to review a termination, which plaintiff provides in support of his denial, however, does not contain a signature requirement, *see* Docket No. 65-19 at 2, and plaintiff identifies no other policy that was violated.

¶¶ 10, 15.[13]  Plaintiff identified only one employee who he believes should have been promoted, an African-American named Jonathan Smith, and claims that he might have talked to a manager about the failure to promote Smith between 2012 and 2014. Docket No. 48 at 9–10, ¶ 31.

## II.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment*.  Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."

---

[13] Defendant denies this fact; however, the evidence that plaintiff cites for this fact and that defendant cites for its denial indicate that other employees, not Swennumson, investigated plaintiff's complaints and that defendant responded to plaintiff with a letter.  *See* Docket No. 65-23 at 4–5, 31:18–32:14; Docket No. 68-4 at 10, 31:1–33:11.  Because defendant's denial that Swennumson did not investigate plaintiff's complaints is unsupported, the Court deems this fact admitted.

*Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III.  ANALYSIS

Plaintiff brings two claims for relief, for race-based discrimination and retaliation, both under 42 U.S.C. §§ 2000e, *et seq*. Docket No. 1 at 5–6. Defendant argues that it is entitled to summary judgment on both claims. *See generally* Docket No. 48.

### A.  Discrimination Claim

Title VII makes it unlawful "for an employer . . . to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." *See* 42 U.S.C. § 2000e-2(a)(1). Such claims can be demonstrated either by "direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic" or by "using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1345

(2015).  "When a Title VII plaintiff presents direct evidence of discrimination, the *McDonnell Douglas* burden-shifting analysis doesn't apply."  *See Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 883 (10th Cir. 2018) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985)).  "Direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons."  *Id.* (citation omitted).  Evidence is direct only if it "proves the existence of a fact in issue without inference or presumption."  *Id.* (citation omitted).  Neither party argues that there is direct evidence of racial discrimination.

A plaintiff may also meet his burden with circumstantial evidence.  *See Fassbender*, 890 F.3d at 884.  To consider allegations made with circumstantial evidence, the Court applies the *McDonnell Douglas* three-step burden-shifting framework.  *See id.* (citing *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315-16 (10th Cir. 2017)).  Under the first step, the plaintiff must "establish a *prima facie* case of discrimination."  *Id.* (citing *Bird v. W. Valley City*, 832 F.3d 1188, 1200 (10th Cir. 2016)).  To make out a *prima facie* race-based discrimination case, a plaintiff must show he (1) is a member of a protected class, (2) suffered an adverse employment action, and (3) was treated less favorably than similarly situated employees not in the protected class.  *See, e.g.*, *Trujillo v. Univ. of Colo. Health Sci. Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998).  Defendant concedes that plaintiff has made out a *prima facie* case.  Docket No. 48 at 11.

If the plaintiff can establish a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action.  *Jones v.*

*Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003); *see also Garrett v. Hewlett–Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002). If the defendant can articulate a permissible reason for the action, the burden then shifts back to the plaintiff to show that the proffered reasons are pretextual. *Plotke*, 405 F.3d at 1099. Plaintiff does not argue that defendant cannot articulate a permissible, non-discriminatory reason for his termination.

The Court thus proceeds to the third *McDonnell Douglas* prong. A plaintiff can withstand summary judgment if he presents evidence sufficient to raise a genuine dispute of material fact regarding whether the defendant's articulated reasons for the adverse employment action are pretextual. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–49 (2000). A plaintiff can show pretext by showing that the plaintiff's protected status, here plaintiff's race, was a determinative factor in the employment decision, or that a "discriminatory reason more likely motivated the employer" or the employer's explanation is "unworthy of credence." *McDonnell Douglas*, 411 U.S. at 804–805; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 517 (1993). "To show that the defendant's proffered race-neutral reasons were actually a pretext for discrimination, [the Tenth Circuit] has held that the plaintiff must demonstrate that the defendant's 'proffered [race-neutral] reasons were so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief.'" *Young v. Dillon Companies, Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (quoting *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004)); *Jones v. Okla. City Public Schools*, 617 F.3d 1273, 1280 (10th Cir. 2010).

"[A] plaintiff must produce evidence that the employer did more than get it wrong." *Jones v. Weld Cnty.*, 594 F.3d 1202, 1211 (10th Cir. 2010). "He [] must come forward with evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda. This is because Title VII licenses us not to act as a 'super personnel department' to undo bad employment decisions; instead, it charges us to serve as a vital means for redressing discriminatory ones." *Id.* "The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 924–25 (10th Cir. 2004) (internal quotation marks and alteration omitted); *see also Miller v. Eby Realty Grp. LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005) ("Pretext exists when an employer does not honestly represent its reasons for terminating an employee."); *Kendrick v. Penske Transp. Serv. Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000) ("[A] challenge of pretext requires us to look at the facts as they appear to the person making the decision to terminate plaintiff."). "The fact-finder must be able to conclude, based on a preponderance of the evidence, that discrimination was a determinative factor in the employer's actions – simply disbelieving the employer is insufficient." *Miller*, 396 F.3d at 1111.

Evidence of pretext may take a variety of forms. *Swackhammer v. Sprint/United Management Co.*, 493 F.3d 1160, 1167–68 (10th Cir. 2007); *see also Kendrick*, 220 F.3d at 1230 (employee may show employer's proffered reason to be pretextual in a variety of ways: by showing that the stated reason is false, by showing that the

employer acted contrary to a written company policy, or by showing that the employer acted contrary to an unwritten company policy or practice, among others).

Plaintiff has not met his burden. First, plaintiff has conceded that every employee who worked for him complained about his behavior. Docket No. 48 at 5–7, ¶¶ 17–21. He acknowledged that defendant would have no reason to think the employees' statements were false and could not explain why his employees would make false statements about him. *Id.* at 8, ¶ 26. Thus, plaintiff has not shown that defendant did not "honestly believe" that it terminated plaintiff, at least in part, based on his treatment of his employees and their statements. *See Rivera*, 365 F.3d at 924–25; *Miller*, 396 F.3d at 1111.

Plaintiff claims that he exchanged text messages with his employees that contradict the "narratives" of the employees' reports. Docket No. 65 at 7, ¶ 9. He also claims that he is "entitled to an inference that a jury must evaluate the context of these employee statements that first surfaced in the days following [plaintiff's] suspension." *Id.* at 11. It is not clear what "inference" plaintiff means, as it is plaintiff's burden to show pretext at this stage of the *McDonnell Douglas* analysis. *See Reeves*, 530 U.S. at 147–49; *Plotke*, 405 F.3d at 1099; *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995) (a plaintiff must show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual – i.e., unworthy of belief"). Moreover, even if the earlier text messages could contradict the employees' later reports, plaintiff has provided no facts that defendant had access to these messages when it decided to terminate plaintiff. The Court judges a termination

14

decision for pretext based on "the facts as they appear to the person making the decision to terminate plaintiff." *See Kendrick*, 220 F.3d at 1231.[14]  Thus, plaintiff has not shown that defendant's proffered reason for his termination, which was based, at least in part, on his treatment of his subordinates, was "so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief.'"  *See Young*, 468 F.3d at 1250.  Even if plaintiff does not believe defendant's reasoning for his termination, that is not sufficient for plaintiff to meet his burden.  *See Miller*, 396 F.3d at 1111.

Second, plaintiff argues that he is "entitled to the reasonable inference (at this stage) that Costco forced the complaining witnesses into an impossible position, that being to malign [plaintiff] and to align themselves with [defendant]."  Docket No. 65 at 12.  Again, it is not clear what plaintiff means by a "reasonable inference," given that it is his burden to demonstrate pretext at this stage.  *See Plotke*, 405 F.3d at 1099. Regardless, plaintiff provides no facts, disputed or undisputed, to support his claim that his employees were pressured into creating false reports about him to Ruiz, and plaintiff therefore has not demonstrated a genuine dispute of material fact on this issue.  *See Allen*, 119 F.3d at 839 (an issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party); *see also Bancoklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1101 (10th Cir. 1999) ("conclusory statements" are not sufficient on summary judgment because summary judgment

---

[14] Plaintiff does not address his racist comments directed at Middle Eastern employees, which appears to be a sufficient basis for his termination under the employee agreement Manager's Standard of Ethics.  Docket No. 48 at 8–9, ¶ 27.

requires that "facts" be established by evidence admissible at trial); *White v. York Intern. Corp.*, 45 F.3d 357, 363 (10th Cir. 1995) (holding that a party relying on only conclusory allegations cannot defeat a properly supported motion for summary judgment).

Third, plaintiff argues that he is entitled to a "reasonable inference" that, "when Ruiz faulted [plaintiff] for not talking with Ruiz, Ruiz was not there to talk about [the Optical Department] but other issues for which [plaintiff] was entitled to a witness." Docket No. 65 at 12.  Plaintiff provides no support for this statement, and he may not simply rely on a conclusory allegation to defeat summary judgment.  *See Bancoklahoma*, 194 F.3d at 1101; *White*, 45 F.3d at 363.  Moreover, the undisputed facts establish that plaintiff knew that he was required to talk to Ruiz about matters concerning the Optical Department and that he did not know what Ruiz intended to talk to him about.  Docket No. 48 at 4–5, ¶ 16.  The undisputed facts also establish that plaintiff had repeatedly ignored Ruiz and refused to talk to him about the sunglasses roadshow.  *Id.* at 4, ¶¶ 13–15.  Plaintiff has not shown that a reasonable jury could conclude that defendant did not "honestly believe" that it terminated plaintiff, at least in part, based on his repeated insubordination and refusal to talk to Ruiz or that defendant's proffered reason is unworthy of belief.  *See Rivera*, 365 F.3d at 924–25; *Miller*, 396 F.3d at 1111; *Young*, 468 F.3d at 1250.

Fourth, plaintiff claims that he is "entitled to a reasonable inference" that his termination was not reviewed as required.  Docket No. 65 at 12.  Plaintiff presumably is referring to his mistaken opinion that a signature is required on a termination notice.

16

The undisputed facts, however, do not indicate that, under the policy plaintiff relies on for this opinion, a Senior Vice President is required to sign the termination. *See* Docket No. 65-19 at 2. Given that plaintiff's opinion about this policy is unsupported and that plaintiff does not identify any other policy that he believes was violated, a reasonable jury could not find that plaintiff's termination was somehow defective or improper. *See Bancoklahoma*, 194 F.3d at 1101; *White*, 45 F.3d at 363. Even if it were, plaintiff has not shown that how that procedural issue means that he was fired because of his race.

Fifth, plaintiff argues that there are disputed facts regarding the credit card "incident" and defendant's lack of follow-up. Docket No. 65 at 10. Plaintiff is mistaken. The parties agree that plaintiff was not disciplined for the credit card incident, *id.* at 6, ¶ 5, and plaintiff acknowledged that he was terminated for violating other policies. Docket No. 48 at 8–9, ¶ 27. There is no genuine dispute of material fact about the credit card incident; nor is the incident relevant to plaintiff's termination. Thus, the defendant's treatment of the credit card incident does not show that plaintiff was terminated because of his race.

Sixth, plaintiff argues that he was treated differently than other employees with regard to training. He claims that "employees at all levels, including his own, were tardy in completing training." Docket No. 65 at 13. This argument is not sufficient to defeat summary judgment because the undisputed facts establish that plaintiff was not disciplined for failing to complete training, *see id.* at 6, ¶¶ 1–2, and defendant admitted that other employees also did not timely complete training. *Id.*, ¶ 3. Moreover, plaintiff has failed to show a genuine dispute of material fact that he was treated differently than

a similarly situated employee.  In the Tenth Circuit, "an inference of discrimination" can be shown through evidence "that the employer treated similarly situated employees more favorably."  *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011) (citing *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007)).  Individuals are considered "similarly situated," for purposes of Title VII, "when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of 'comparable seriousness.'" *PVNF*, 487 F.3d at 801 (quoting *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006)).  "In determining whether two employees are similarly situated, 'a court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees.'" *McGowan*, 472 F.3d at 745 (quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997)).  Plaintiff states that Tim Petree, who is a manager at the same level as plaintiff, did not complete training and was not fired.  Docket No. 65 at 13.  Plaintiff, however, provides no facts about Mr. Petree in his response.  He does not state that he and Mr. Petree had "the same supervisor, [we]re subjected to the same standards governing performance evaluation and discipline, [or] have engaged in conduct of 'comparable seriousness.'" *PVNF*, 487 F.3d at 801.  Because plaintiff has offered no facts regarding any similarly situated employee, he has not shown a genuine dispute of material fact that he was treated differently than a similarly situated employee from which the jury could infer discrimination in his termination.  *See Bancoklahoma*, 194 F.3d at 1101; *White*, 45 F.3d at 363.

Seventh, plaintiff argues that his Counseling Notice for absenteeism, which defendant submitted to the EEOC, was "simply untrue," Docket No. 65 at 13, but, as indicated above, plaintiff cites no support in the record for this opinion.  For instance, plaintiff does not provide evidence that he was at work the days that defendant claimed that he was absent, or that his absence was excused.  Plaintiff's unsupported opinion does not indicate a genuine dispute about this issue, and he has not shown that a reasonable jury could find that the Counseling Notice for his absenteeism was untrue. *See Allen*, 119 F.3d at 839; *Bancoklahoma*, 194 F.3d at 1101; *White*, 45 F.3d at 363. Plaintiff also states that the Counseling Notice was not provided to him and that he did not sign it.  Docket No. 65 at 13–14.  Plaintiff, however, provides no indication that defendant's policies require the recipient of a Counseling Notice to sign the document. His argument about the Counseling Notice, therefore, is not sufficient to meet his burden of showing that defendant's reason for terminating him is pretextual.

Eighth, plaintiff argues that Ruiz was not GM in 2017 and yet provided plaintiff a performance review without any first-hand knowledge of plaintiff's actual performance. *Id.* at 14.  This is not sufficient for a reasonable jury to find that plaintiff's performance review was pretextual or that defendant did not honestly believe that it terminated plaintiff for the reasons that it stated.   *See Rivera*, 365 F.3d at 924–25.  At most, plaintiff has shown a dispute about whether defendant's treatment of his performance reviews was wise, fair, or correct, but that is not the relevant inquiry or sufficient to show pretext.  *See id.*  Plaintiff also states that Dages had reasons not to trust Ruiz, Docket No. 65 at 14; however, plaintiff provides no factual support for this statement.  *See*

*Bancoklahoma*, 194 F.3d at 1101; *White*, 45 F.3d at 363.

Finally, plaintiff argues that, because he had no adverse performance reviews for most of his tenure, defendant's "defense" "lack[s] credibility." Docket No. 65 at 14–15. Plaintiff, however, both misstates his record and the standard for pretext. First, the undisputed facts show that, in several of plaintiff's performance reviews, plaintiff's managers noted his "lack of tolerance" for others and his "reluctance to adjust" or "accept[] criticism [without being] defensive." Docket No. 48 at 2, ¶ 3. His managers encouraged him to "work on building his relationships with those above him," to work on his "interpersonal skills," and to "maintain[] a positive attitude." *Id.* Plaintiff has not shown that these reviews were pretextual. Second, even if plaintiff's performance reviews were generally positive, those reviews do not indicate a genuine dispute of material fact that – after each of his employees complained about him, after he made racist comments to or about Middle-Eastern employees, and after he was insubordinate to a manager – defendant did not honestly believe that it terminated plaintiff for those reasons. *See Rivera*, 365 F.3d at 924–25; *Miller*, 396 F.3d at 1111.

The Court finds that plaintiff has not presented facts from which a reasonable jury could conclude that the decision to terminate him was so meritless as to call into question its actual motivation. *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008) (finding no evidence "of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons") (citation omitted). The undisputed facts in the record before

20

the Court do not create an inference that plaintiff's termination was motivated by discriminatory intent based on his race.  As plaintiff fails to establish that defendant's reasons for his termination were a pretext for discrimination, defendant is entitled to summary judgment on plaintiff's claims of race discrimination.  *See Harp v. Dep't of Hum. Servs., Colo. Mental Health Inst. at Pueblo*, 932 F. Supp. 2d 1217, 1228 (D. Colo. 2013) (dismissing discrimination claim on summary judgment where plaintiff failed to show pretext).

### B.  Retaliation Claim

Plaintiff also brings a retaliation claim under Title VII.  Docket No. 1 at 6.  Title VII forbids retaliation against an employee because he has "opposed" any practice made unlawful by Title VII, or because he has "participated . . . in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  Where there is no direct evidence of retaliation, the burden-shifting analysis established in *McDonnell Douglas* also applies to retaliation claims.  *Kendrick*, 220 F.3d at 1229–30; *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (a plaintiff can prove retaliation "by relying on the three-part McDonnell Douglas framework") (internal quotation marks omitted).  To establish a *prima facie* Title VII retaliation claim, a plaintiff must show: (1) engagement in activity protected under Title VII, (2) a "materially adverse" employment action, and (3) a causal connection between the protected activity and the materially adverse employment action.  *Singh v. Cordle*, 936 F.3d 1022, 1042 (10th Cir. 2019) (citing *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)).  "As with claims for discriminatory discharge, if the plaintiff

21

establishes a *prima facie* case, the burden shifts to the employer to articulate a nondiscriminatory reason for the adverse employment action.  If the employer satisfies this burden of production, then, in order to prevail on her retaliation claim, the plaintiff must prove that the employer's articulated reason for the adverse action is pretextual, i.e. unworthy of belief."  *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001) (internal quotation marks and citations omitted); *see also Stover v. Martinez*, 382 F.3d 1064, 1070–71 (10th Cir. 2004) (when a defendant asserts non-discriminatory reasons for its actions, a plaintiff must also establish that the defendant's reasons are a pretext for retaliation).

Defendant argues that it is entitled to summary judgment on plaintiff's retaliation claim because plaintiff cannot establish a *prima facie* case of retaliation.  Docket No. 48 at 16–18.  Plaintiff alleges in his complaint that he "engaged in activity protected by federal law, both in [sic] his own behalf by complaining, repeatedly, to appropriate parties within Costco about diversity issues and discrimination occurring at Costco and on behalf of others against whom Costco was discriminating."  Docket No. 1 at 6, ¶ 43. He also alleges that defendant took action to discouraging plaintiff and others from engaging in protected activity and that his ultimate termination was in retaliation for engaging in protected activity.  *Id.*, ¶¶ 44–45.

The undisputed facts indicate that plaintiff complained about diversity to defendant's human resources department and other management officials, yet plaintiff did not participate in any diversity initiatives and did not offer recommendations to

improve diversity.  Docket No. 48 at 9, ¶ 30.[15]  The undisputed facts also indicate that

plaintiff made complaints about diversity.  Docket No. 65 at 7–8, ¶¶ 10, 15.  However,

plaintiff provides no specific details about his complaints and has, therefore, failed to

show that he engaged in opposition to a "practice made an unlawful employment

practice" by Title VII."  *See* § 2000e-3(a); *Petersen v. Utah Dep't of Corr.*, 301 F.3d

1182, 1188 (10th Cir. 2002) ("Opposition to an employer's conduct is protected by [Title

VII's anti-retaliation provision] only if it is opposition to a 'practice made an unlawful

employment practice by [Title VII].") (citation and alteration omitted)); *see also Hinds v.

Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 n.13 (10th Cir. 2008) ("[A] vague

reference to discrimination and harassment without any indication that this misconduct

was motivated" by race (or any other category protected by Title VII) does not constitute

protected activity and will not support a retaliation claim."); *Lucas v. Office of Colo.

State Pub. Def.*, 705 F. App'x 700, 706 (10th Cir. 2017) (unpublished) (finding a

plaintiff's verbal complaints to his employer regarding "unfair treatment" and his threats

"to complain to the EEOC about a hostile work environment" to be inadequate, for

purposes of establishing a *prima facie* case of retaliation, because nothing in the record

suggested that the plaintiff complained to his employer about race or gender

discrimination, specifically).

  Even assuming that plaintiff's diversity complaints satisfied the first element of

his *prima facie* case, plaintiff has provided no facts that there is a causal connection

between his complaints and his termination, which is the third element in the *prima facie*

---

[15] Plaintiff claims that Swennumson did not investigate plaintiff's whistleblowing
or diversity complaints.

case.  *See Singh*, 936 F.3d at 1042.  Plaintiff does not mention retaliation at all in his response to defendant's motion.  "To establish the requisite causal connection between his protected conduct and termination, [plaintiff] must show that [defendant] was motivated to terminate his employment by a desire to retaliate for his protected activity." *Hinds*, 523 F.3d at 1203 (citation omitted).  "As a prerequisite to this showing," plaintiff "must first come forward with evidence from which a reasonable factfinder could conclude that those who decided to fire him had knowledge of his protected activity." *Id.* (citation omitted); *see also Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993) ("To establish a causal connection, plaintiff must show that the individual who took adverse action against him knew of the employee's protected activity." (internal quotation omitted)).  "Unless an employer knows that an employee is engaging in protected activity, it cannot retaliate against that employee because of the protected conduct, as required by statute."  *Jones v. UPS, Inc.*, 502 F.3d 1176, 1195 (10th Cir. 2007); *see also Petersen*, 301 F.3d at 1188–89 ("employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII").  There are no facts that Wilcox, Whitaker, and Miller, who terminated plaintiff, *see* Docket No. 48 at 9, ¶ 29, were aware of plaintiff's previous complaints.  Thus, plaintiff fails to establish a *prima facie* case of retaliation.

Even if plaintiff could establish a *prima facie* case for his retaliation claim, as with his race discrimination claim, plaintiff must meet his burden under the *McDonnell Douglas* framework.  *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999).  As discussed above, defendant has established its "exceedingly light" burden by

demonstrating legitimate, non-discriminatory reasons for plaintiff's termination.  Thus, the issue once again becomes whether plaintiff can establish that defendant's asserted reasons were merely a pretext for retaliation.  "[T]he pertinent question in determining pretext is not whether the employer was right to think the employee engaged in misconduct, but whether that belief was genuine or pretextual."  *Pastran v. K–Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000) (citation omitted).  Plaintiff does not present evidence "sufficient to raise a genuine doubt about [d]efendant's motivation." *See Jones*, 349 F.3d at 1268 (internal quotation marks and citation omitted).  The evidence does not support a claim that plaintiff would not have been terminated "but for" his protected activity, rather than based on his treatment of other employees and his insubordination.  *See Harp*, 932 F. Supp. 2d at 1231; *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."). Plaintiff's retaliation claim fails on the same grounds that his race discrimination claim fails, namely, that defendant had legitimate reasons for its termination decision and he has not met his burden of showing that defendant's proffered basis for his termination was a pretext for retaliation.  Plaintiff thus fails to establish genuine issues of material fact to survive summary judgment on his retaliation claim, and the Court will grant defendant's motion for summary judgment on this claim.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Motion for Summary Judgment by Defendant Costco Wholesale Corporation [Docket No. 48] is **GRANTED**.  It is further

**ORDERED** that plaintiff's first and second claims are **DISMISSED with prejudice**.  It is further

**ORDERED** that this case is closed.

DATED March 29, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge